IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PENNSYLVANIA FAMILY INSTITUTE,** *et al.*, | Civil No. 1:05-CV-2172 |
| Plaintiffs, | **JUDGE SYLVIA H. RAMBO** |
| v. | |
| **THOMAS C. BLACK, III,** *et al.*, | |
| Defendants. | |

## **M E M O R A N D U M**

Before the court is Plaintiffs' Motion for a Preliminary Injunction. The Preliminary Hearing and Trial on the Merits was held on November 1, 2005. The parties have briefed the issues and the matter is ripe for disposition. For the reasons discussed below, the court finds that Plaintiffs lack standing and that the case is not ripe for adjudication. Accordingly, the court will deny the Motion for a Preliminary Injunction and will dismiss the Complaint, without prejudice.

**I.** **Background**

**A.** **Factual Background**

Plaintiffs' challenge the constitutionality of provisions of the Pennsylvania Judicial Canons and Rules Governing Standards of Conduct of District Justices. The specific provisions at issue are the following:

1) Judicial Canon 7B(1)(c) and Rule 15D(3), which provide in relevant part that judicial candidates "should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the

office" ("the pledges and promises clause") or "make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court . . . ." ("the commitment clause"); and

2) Judicial Canon 3C(1) and Rule 8A, which require a judge to recuse himself from proceedings in which the judge's "impartiality might reasonably be questioned" ("the recusal clause").

Plaintiff Pennsylvania Family Institute ("PFI") is a non-profit research and education organization that is not associated with any political candidate, party, or campaign committee. Plaintiffs Ronald N. Cohen and Charles L. Stump are individuals and residents of Pennsylvania. Defendants are the members of the Pennsylvania Judicial Conduct Board and the Disciplinary Counsel of the Pennsylvania Office of Disciplinary Counsel.

One of the things that PFI does is gather information about candidates for public office through questionnaires, which it then publishes to its members and other citizens. On September 2, 2005, PFI mailed a "2005 Pennsylvania Family Institute Judicial Candidate Questionnaire" to all Pennsylvania judicial candidates[1] for the November 8, 2005 election. The accompanying cover letter indicated that the questionnaire results would be published in a Voter's Guide posted on PFI's web site. In addition, the cover letter stated:

> As a judicial candidate, we understand that you are subject to the Pennsylvania Code of Judicial Conduct. We believe your responses to our Questionnaire are constitutionally protected under *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002), which struck down on First Amendment grounds a Minnesota Judicial Canon that

---

[1] There are over 400 judicial candidates for election or retention to Pennsylvania's appellate courts, courts of common pleas, municipal courts, magisterial district judgeships and Philadelphia traffic court.

prohibited judicial candidates from "announc[ing] their views on disputed legal or political issues." However, if you remain fearful that you may not answer our Questionnaire under the Code of Judicial Conduct, then you should seek an advisory opinion from [the Pennsylvania Judicial Conduct Board or the Pennsylvania Lawyers' Disciplinary Board.]

The questionnaire contains the following questions:

1.  Which of the following former U.S. Presidents best represents your political philosophy?
**John F. Kennedy / Jimmy Carter / Ronald Reagan / George Bush (former) / Undecided / Decline to Answer (circle one)**

2.  Which one of the current Justices of the U.S. Supreme Court most reflects your judicial philosophy?
**Rehnquist / Stevens / O'Connor / Scalia / Kennedy / Thomas / Souter / Ginsburg / Breyer / Undecided / Decline to Answer (circle one)**

3. Do you believe that *Roe v. Wade*, 410 U.S. 113 (1973), insofar as it recognizes a "right to privacy" that includes abortion under the United States Constitution, was correctly or incorrectly decided?
**Correctly Decided / Incorrectly Decided / Undecided / Decline to Answer (circle one)**

4. Rate your judicial philosophy on a scale of 1-10 with "living document" approach being a "1" and "strict constitutionalist" or "originalist" being a "10."
**1  2  3  4  5  6  7  8  9  10   Decline to Answer (circle one)**

5. Do you believe that the Pennsylvania Constitution permits a display of the Ten Commandments in courtrooms?
**Yes / No / Undecided / Decline to Answer (circle one)**

6. Do you believe that the Pennsylvania Constitution recognizes a right to same-sex marriage?
**Yes / No / Undecided / Decline to Answer (circle one)**

7. Do you believe that the Pennsylvania Constitution permits student-led prayers in public schools?
**Yes / No / Undecided / Decline to Answer (circle one)**

3

>8.  Please list the five organizations in which you are most involved as a member, through contributions, and/or through volunteering.

In addition, each of the first seven questions included an asterisk next to the "Decline to Answer" option and each page of the questionnaire included the following footnote:

>* This response indicates that I believe that I am prohibited from answering this question by Canon 7(B)(1)(c) of the Pennsylvania Canons of Judicial Conduct, which states that judicial candidates may not "make pledges or promises of conduct in office" or "make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court," and that I will have to disqualify myself as a judge in any proceeding concerning this matter on account of Canon 3(C)(1) because my "impartiality might reasonably be questioned" if I answered this question.

PFI attached sixteen completed questionnaires to its Brief in Support of its Motion for a Preliminary Injunction.  Four candidates who returned those questionnaires provided answers other than "decline to answer" to all of the questions.  With respect to questions one through seven, anywhere from four to eleven candidates circled "decline to answer," depending upon the question.

One candidate specified that he declined to answer question one because "personal philosophy irrelevant for common pleas court, [sic]" but specified that he declined to answer question five because it could come before the court.  Another candidate declined to answer questions five through seven but included statements of general beliefs that were not responsive to the specific questions posed.  Otherwise, no candidates commented or elaborated on why they declined to answer particular questions.

4

Finally, two sitting trial judges, Louis J. Farina and Michael A. Georgelis, did not return completed questionnaires but wrote a letter to Michael Geer, President of PFI, that stated:

> Dear Mr. Geer:
>
> This is in response to your request that we complete the Pennsylvania Family Institute's Voter Guide questionnaire. As sitting trial judges for the past 20 years, we have authored many published opinions (as well as unpublished that are available for public inspection in the County Law Library) that can be examined to evaluate our competency as trial judges. In deciding upon the issue of our retention, the electorate is not dealing with individuals whose judicial perspective and abilities are unknown or unknowable.
>
> We must respectfully decline to complete your questionnaire as we believe it attempts to identify how a judge would approach and rule upon issues that may come before him/her as a sitting judge. We are aware of your organization and its work and intend no disrespect by declining to complete your questionnaire.

PFI subsequently contacted Pennsylvania's Judicial Conduct Board ("the Board") regarding whether judicial candidates could respond to the questionnaire without fear of discipline. Joseph A. Massa, Jr., Chief Counsel for the Board, responded to the request in a letter dated October 12, 2005, stating that because the Board's role is to "review, investigate, and where merited, prosecute complaints of judicial misconduct by judges" it is prohibited from rendering advisory opinions.

PFI next contacted the Ethics Committee of the Pennsylvania Conference of State Judges ("Ethics Committee") in a letter dated October 13, 2005, seeking an answer to the same question of whether judicial candidates could respond to the questionnaire. Anne E. Lazarus, Chair of the Ethics Committee, replied in a

5

letter dated October 14, 2005, stating that she could not answer PFI's inquiry because the Committee "only give[s] advice to those individuals subject to the Code and those opinions are confidential to the advisees."

### B. Procedural History

PFI filed a Verified Complaint for Injunctive and Declaratory Relief on October 24, 2005. On the same day, PFI filed a Motion for Preliminary Injunction and Temporary Restraining Order. The court held a hearing on the temporary restraining order on October 27, 2005. The court denied the motion for the temporary restraining order, but held the Preliminary Hearing and trial on the merits[2] soon thereafter, on November 1, 2005.

At the November 1, 2005 hearing the parties debated the issues of standing and ripeness, as well as Plaintiffs' claims that the various provisions are unconstitutional either facially or as applied or both. The weight of Defendants' arguments, at the hearing and in their Memorandum in Opposition of Plaintiffs' Motion for Preliminary Injunction, rested upon Plaintiffs' failure to identify any judicial candidates as "willing speakers." Defendants argue, therefore, that Plaintiffs fail to satisfy threshold standing and ripeness requirements. The court will address these arguments below.

---

[2] On October 27, 2005, Plaintiffs filed a Motion to Consolidate the hearing on the preliminary injunction and trial on the merits, which the court granted.

**II.        Discussion**

     **A.        Standing Requirements**

Three well-established constitutional standing requirements are set forth in *Lujan v. Defenders of Wildlife*: 1) "injury in fact" that is "concrete and particularized" and "actual or imminent"; 2) a causal connection between the injury alleged and the "challenged action of the defendant"; and 3) the injury is likely (speculation is insufficient) to be "redressed by a favorable decision."  504 U.S. 555, 560-61 (1992).  Moreover, "[t]he party invoking federal jurisdiction bears the burden of establishing these elements.  Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof . . . ."  *Id.* at 561 (internal citations omitted).

When, as in the instant case, the plaintiff "is not himself the object of" the challenged government action or inaction, standing is not precluded but is "ordinarily 'substantially more difficult to establish.' "  *Id.* at 562.  In addition, prudential standing requirements typically require that plaintiff "must assert [their] own legal rights and interests and cannot rest [their] claim to relief on the legal rights or interests of third parties."  *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955 (1984).  However, in the First Amendment context the Supreme Court has relaxed its traditional rules of standing to permit "attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity."  *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973) (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)).  The relaxation of standing

requirements within the First Amendment context reflects concerns that society would otherwise suffer a greater harm if free speech were chilled because potential speakers choose not to speak rather than risk punishment. *See Sec'y of State of Md.*, 467 U.S. at 956-57.

Accordingly, the First Amendment extends protection to recipients of speech as well as to the source of the speech. *Va. State Bd. of Pharm. v. Va. Citizens Consumer Council*, 425 U.S. 748, 756 (1976). However, "[f]reedom of speech presupposes a willing speaker." *Id.* Thus, even in a relaxed First Amendment context, the standing of "listeners" turns upon the existence of a "willing speaker." *See Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 83-85 (2d Cir. 2003).

### B. Ripeness Requirements

The ripeness doctrine precludes a court from hearing a dispute before it is "sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-149 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977)). In determining ripeness, the court considers factors such as "whether the parties are in a 'sufficiently adversarial posture to be able to present their positions vigorously,' whether the facts of the case are 'sufficiently developed to provide the court with enough information on which to decide the matter conclusively,' and whether a party is 'genuinely aggrieved so as to avoid expenditure of judicial resources on matters which have caused harm to no one.' " *Id.* (citing *Peachlum v. City of New York*, 333 F.3d 429, 433-34 (3d Cir. 2003).

The ripeness inquiry is two-fold. The court must examine 1) "the fitness of the issues for judicial determination" and 2) "the hardship of the parties of withholding court consideration." *Abbott Labs*, 387 U.S. at 149.

### C. Analysis

Plaintiffs lack standing because they fail to adduce sufficient evidence of a willing speaker. The court's finding that Plaintiffs' failure to present a sufficiently ripe claim is similarly based upon this insufficiency in the existing factual record. Thus, the court's standing and ripeness findings overlap to some extent; accordingly, the court will address both issues together.

Plaintiffs fail to specifically identify any judicial candidate who is a willing speaker. Plaintiffs cannot establish standing as listeners or receivers of protected speech unless they are able to identify a willing speaker. *Spargo*, 351 F.3d at 84 n.19. (citing *Competitive Enter. Inst. v. U.S. Dept. of Transp.*, 856 F.2d 1563, 1566 (D.C. Cir. 1988) (noting that "a government regulation cannot cause [a First Amendment deprivation to a listener] unless plaintiffs can identify a willing speaker"); *Basiardanes v. City of Galveston*, 682 F.2d 1203, 1211 (5th Cir. 1982) (stating that listeners "have standing only if there is a speaker who wishes to express himself or herself")).

Other courts that have considered the virtually identical issue regarding constitutionality of judicial canon provisions have determined that standing requirements were met, but in different factual circumstances than are presently before this court. Standing for non-candidate parties has been proper in other cases because either a judicial candidate was also a plaintiff or made an affirmative

9

statement that he or she would engage in speech but for the judicial canons.[3]  In *Family Trust Foundation of Kentucky v. Wolnitzek* former Circuit Judge Will T. Scott stated that he could not answer some of the questionnaire's questions due to the judicial canons, *although he wanted to*.  345 F. Supp. 2d 672, 682 (E.D. Ky. 2004), *stay denied by* 388 F.3d 224 (6th Cir.).  In addition, Janet Stumbo, a sitting Justice of the Supreme Court of Kentucky, stated in a letter to the plaintiffs that she "*regret[ted]* that [she was] unable to participate in [the] educational endeavor" due to the judicial canons.  *Id.* (emphasis added).

In *North Dakota Family Alliance, Inc. v. Bader*, candidate Steven L. Marquart wrote a letter stating "*[a]s much as [he] would like to respond* to the questions, the North Dakota Code of Judicial Conduct [prevented him] from doing so."  361 F. Supp. 2d 1021, 1028-29 (D. N.D. 2005) (emphasis added).  Another candidate, Leo F.J. Wilking wrote "*unfortunately*, I am prohibited by Canon 5 . . . from responding to this type of survey."  *Id.* at 1029 (emphasis added).

In *Spargo*, the court determined that third party plaintiffs McNally and Kermani had standing insofar as their claims were inextricably intertwined with those of Thomas J. Spargo, an incumbent judge who was also a plaintiff in the action.  351 F.3d at 83 (McNally's and Kermani's claims were vacated along with Spargo's under the *Younger* doctrine and could not independently survive abstention because McNally and Kermani failed to identify any other candidates who were willing speakers).

---

[3]  In the interest of completeness, the court acknowledges that, in addition to the cases cited herein, *Alaska Right to Life Political Action Committee v. Feldman*, 380 F. Supp. 2d 1080 (D. Alaska 2005) determined that standing and ripeness requirements were satisfied.  However, the *Feldman* court did not set forth a detailed statement of facts.  Thus this court is unable to factor *Feldman* into the instant analysis.

Finally, although standing was not an issue before the Supreme Court in *Republican Party of Minnesota v. White*, a judicial candidate was one of the plaintiffs, so the willing speaker requirement appears to have been satisfied there as well. 536 U.S. 765, 768 (2002).

In contrast, the instant Plaintiffs, none of whom are judicial candidates themselves, fail to provide any affirmative statements by candidates that would indicate that any of the candidates are willing speakers. Plaintiffs offer only the "decline to answer" questionnaire responses, linked to the boilerplate footnote, as such evidence. However, although those responses may be sufficient to establish that the candidates believed that the judicial canons prevented them from providing those answers, they fail to establish that any of the candidates would have provided the answers *but for* the judicial canons.

Moreover, absent such evidence, the court refuses to speculate as to the candidates' personal beliefs regarding the judicial canons. Put simply, on the record before the court, it is just as likely as not that the candidates believe that it is more prudent for them to refrain from providing such answers or otherwise hold independent beliefs that are consistent with the goals of the judicial canons. Therefore, Plaintiffs fail to satisfy their burden of establishing that a willing speaker exists and are unable to satisfy standing requirements.

Plaintiffs have also argued to some extent that they have willing speakers with respect to the questions that candidates have provided answers for, but that PFI is still chilled from publishing that information by the canons. The court is not persuaded by this argument. Granted, the four candidates who answered all of the questions and the other candidates who provided answers to at least some of the

11

questions appear to be willing speakers with respect to the answers provided. However, there is nothing barring PFI from disseminating that information. In order for Plaintiffs to claim that they are injured from the chilling of speech, they would, as a practical matter, need to show that speech has been chilled. The candidates have spoken; thus, no speech has been chilled in those cases.

Moreover, Plaintiffs' argument that the chilling occurs when PFI refrains from publishing the provided responses out of fear that the candidates will be punished is too speculative on the instant facts. The court will not address the merits of whether, in the First Amendment context, punishment to candidates who have already chosen to answer the questions would establish standing for the instant non-candidate Plaintiffs. The court does not reach that issue here because the fear of punishment is simply too speculative.

The ripeness inquiry does not require Plaintiffs to take steps that would conclusively subject candidates to sanctions or other hardships before the court may hear the claim. *See Abbott Labs.*, 387 U.S. at 153. However, a comparison with prior cases illustrates that the present factual record is insufficient to support Plaintiffs' stated fear.

In *Wolnitzek*, the factual record included decisions of Kentucky courts that had already examined how the state's disciplinary bodies had interpreted the judicial canons in enforcement actions. 345 F. Supp. 2d at 688, 691-92 (discussing *Ackerson v. Ky. Judicial Retirement and Removal Comm'n*, 776 F. Supp. 309 (W.D. Ky. 1991); and *Deters v. Judicial Retirement and Removal Comm'n*, 873 S.W.2d 200 (Ky. 1994); and *Summe v. Judicial Retirement and Removal Comm'n*, 947 S.W.2d 42 (Ky. 1997)). Moreover, following the Supreme Court's *White*

decision, the Kentucky Judicial Conduct Commission and Ethics Committee issued memoranda stating that Kentucky's judicial canons were still valid post-*White*. *Wolnitzek*, 345 F. Supp. 2d at 694.  In contrast, the present record is devoid of any interpretation of the judicial canons by Pennsylvania's courts, the Pennsylvania Judicial Conduct Board, or the Pennsylvania Office of Disciplinary Counsel.  In sum, the facts of this case are not sufficiently developed for this court to rule conclusively.  Thus, Plaintiffs fail to establish that the case is ripe for adjudication.

### III.        Conclusion

For the foregoing reasons, Plaintiffs fail to satisfy standing and ripeness requirements.  Accordingly, the court will deny Plaintiffs' Motion for a Preliminary Injunction and dismiss the Complaint, without prejudice.  An appropriate order will issue.

> s/Sylvia H. Rambo
> SYLVIA H. RAMBO
> United States District Judge

Dated:  November 4, 2005.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **PENNSYLVANIA FAMILY INSTITUTE,** *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **THOMAS C. BLACK, III,** *et al.*, <br><br> **Defendants.** | **Civil No. 1:05-CV-2172** <br><br> **JUDGE SYLVIA H. RAMBO** |

## <u>O R D E R</u>

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT:**

    1)    Plaintiffs' Motion for a Preliminary Injunction is **DENIED**;

    2)    Plaintiffs' Complaint is **DISMISSED**, without prejudice; and

    3)    The Clerk of Court is directed to close the file.

                                                   s/Sylvia H. Rambo<br>
                                                   SYLVIA H. RAMBO<br>
                                                   United States District Judge

Dated: November 4, 2005.